UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| RB PRODUCTS, INC., a Texas corporation;<br><br>Plaintiff,<br><br>v.<br><br>Encore DEC, LLC, et. al.,<br><br>Defendants. | Case No. 2:21-cv-00587-RFB-EJY<br><br>**ORDER** |

### I.     INTRODUCTION

Before the Court for consideration is Plaintiff's Motion for Summary Judgment, ECF No. 16.

### II.    PROCEDURAL BACKGROUND

Plaintiff RB Products, Inc. brings this action against Defendant Encore DEC, LLC, Defendant RESC, LLC, Defendant Randy Soule, Defendant New Rise Renewables, LLC, and Defendant New Rise Renewable Reno, LLC, for breach of contract and breach of the covenant of good faith and fair dealing for failing to pay an agreed upon settlement amount by the contractual date. Plaintiff filed a complaint in federal court on April 9, 2021. ECF No. 1. A first amended complaint was filed on April 15, 2021 prior to any responsive pleading. ECF No. 5. On June 15, 2021, Defendants answered the amended complaint. ECF No. 15.

On June 28, 2021, Plaintiffs filed a motion for summary judgement. ECF No. 16. On July 22, 2021, Defendants filed a response. ECF No. 19. Also on July 22, 2021, Defendants filed a counter motion to defer ruling on pending discovery pursuant to FRCP 56(d).

On August 2, 2021, the magistrate judge entered a scheduling order. The cut-off date for discovery was January 14, 2022. Dispositive motions were due by February 15, 2022. ECF No. 24. No new motions were filed on or after February 15, 2022.

On August 5, 2021, Plaintiff filed a reply to Defendant's response. ECF No. 25. On the same day, they also filed a response to Defendant's ECF No. 20 Motion. ECF No. 26. On August 19, 2021, Defendants replied to Plaintiff's response on to ECF No. 20 motion.

On March 16, 2022, the Court heard oral argument on the two outstanding motions. ECF No. 35. At the hearing, the Court denied as moot Defendant's Countermotion to Defer Ruling Pending Discovery. A written order on the Motion for Summary Judgment follows.

### III.   FACTUAL BACKGROUND

#### a.   Undisputed Facts

The Court finds the following facts to be undisputed. RB Products is Texas-based company that specializes in the processing, trading, and distribution of petrochemicals, specialty chemicals, and other oil-related products. In February 2019, RB Products sued Defendants in Federal District Court for the District of Nevada, Case No. 3:19-cv-00105-MMD-WGC ("the Original Lawsuit"), alleging, among other things, that Defendants misappropriated RB Products' trade secrets information and used that information during the start-up of a large renewable-diesel manufacturing facility in Reno, Nevada.

In December 2020, RB Products and Defendants entered into a Release and Settlement Agreement to resolve the Original Lawsuit. ("the Settlement Agreement"). The Defendants, jointly and severally, agreed to pay RB Products $1,250,000 in exchange for a dismissal of the Original Lawsuit. The Settlement Agreement contained the following language:

> **Payment to RB.**
>
> On or before April 1, 2021, the Encore Defendants, jointly and severally, agree to pay - and RB agrees to accept - the total amount of One Million Two Hundred Fifty Thousand and 00/100 Dollars ($1,250,000.00) in the aggregate. Encore Defendants represent and warrant

that they have started efforts to obtain financing for their business operations. Encore Defendants represent and warrant that one of the conditions of obtaining financing for Ryze Reno is the dismissal of the Lawsuit. Encore Defendants agree to use their best efforts to obtain financing as expeditiously as possible. Therefore, based on these representations and warranties, RB agrees to dismiss the Lawsuit with prejudice. To the extent funding occurs prior to April 1, 2021, the Encore Defendants shall make the foregoing payment within 3 business days of receipt of funding. Said payments shall be made by wire transfer to RB 's counsel, Mahendru, PC, pursuant to wiring instructions to be provided by RB 's counsel.

**Release as Between the Parties.**

Upon satisfaction of the payment obligations set forth in Paragraph I above, the Parties agree that they will fully, finally and forever release, acquit, discharge, settle and compromise any and all claims, counterclaims, cross-claims, defenses, controversies, and causes of action or suits at law or in equity between the Parties that arise out of, relate to or are connected in any way with their previous business dealings with one another, including, but not limited to, any claims that were or could have been asserted in the Lawsuit or in any other proceeding whatsoever, known or unknown, foreseen or unforeseen. That release will be as between and/or among: (i) RB and its respective agents, employees, affiliates, trustees, members, principals, representatives, attorneys-in-fact, legal counsel, predecessors, successors, assigns, related entities, divisions, officers, directors, managers, owners, parents, subsidiaries, stockholders, advisors, related entities, assigns, successors, heirs, predecessors in interests, and insurers on the one hand; and (ii) the Encore Defendants and the irrespective agents, employees, affiliates, trustees, members, principals, representatives, attorneys-in-fact, legal counsel , predecessors, successors, assigns, related entities, divisions, officers, directors, managers, owners, parents, subsidiaries, stockholders, advisors, related entities, assigns, successors, heirs, predecessors in interest, and insurers on the other. This Release will thereby constitute a covenant to no longer sue upon or prosecute the claims being released herein; provided that such released claims shall not include any claims to enforce rights under, or with respect to, this Agreement.

On March 29, 2021, Defendants' counsel indicated that Defendants would not be making the April 1st payment because "a closing [of financing] has not yet happened." Plaintiff's counsel responded saying that the "April 1 settlement payment is not conditioned on financing." Defendants' counsel replied that "my client . . . will honor the terms of the settlement agreement." However, as of March 16, 2022, Defendants have yet to make the payment. Further, it is undisputed that, although Defendants have made numerous attempts to secure the underlying finding, these funding agreements have not yet materialized.

   b. **Disputed Facts**

Defendants dispute the Plaintiff's contention that the settlement agreement payment was

- 3 -

due with certainty by April 1, 2021. They argue that there was a known condition precedent to payment: that Defendants obtained underlying financing. They argue that Plaintiff knew that around January 2020, Defendants began seeking financing to fund, among other things, construction and development of a new plant, additions to an existing facility, refinancing of existing debt on an existing facility, and defending and/or settling RB's claims eventually asserted in the original lawsuit. They argue that they informed Plaintiff that they would not be able to settle any claims until they received financing.

### IV. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing a matter determines which facts are material to a case. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

/ / /

/ / /

It is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage. Zetwick v. Cty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

## V. DISCUSSION

Plaintiff moves for summary judgment on their breach of contract claim, arguing that there is no genuine dispute of material fact and that Defendants' affirmative defenses fail. Defendants argue that summary judgment is not appropriate because there are genuine issues of material fact as to Defendants' affirmative defenses of impossibility, impracticability, unilateral or mutual mistake, or failure of a condition precedent.

### a. The Settlement Agreement

Because a settlement agreement is a contract under Nevada law, its construction and enforcement are governed by the principles of contract law. May v. Anderson, 119 P.3d 1254 (Nev. 2005). For an enforceable contract, basic contract principles require, an offer and acceptance, meeting of the minds, and consideration. Id.

Under Nevada law, the objective of interpreting contracts is to discern the intent of the contracting parties. Am. First Fed. Credit Union v. Soro, 359 P.3d 105, 106 (Nev. 2015). Traditional rules of contract interpretation are employed to accomplish that result. When the language of the contract is clear and unambiguous, the contract will be enforced as written. Id. An ambiguous contract is susceptible to more than one reasonable interpretation, and any ambiguity, moreover, should be construed against the drafter. Id.

Here, the language of the contract is not ambiguous. The contract clearly states: "On or before April 1, 2021, the Encore Defendants, jointly and severally, agree to pay—and RB agrees to accept---the total amount of One Million Two Hundred Fifty Thousand. . . ." ECF No. 16-1.

While the intervening sentences of the contract discuss funding, nothing in their language makes payment contingent upon securing funding. While it may be the case that there was additional context regarding the status of funding agreements or the need for those agreements, this understanding was not memorialized in any way in the plain text of the contract. This evidence is therefore, not properly considered by this Court in analyzing the plain text of this unambiguous language. See, e.g., M.C. Multi-Family Dev., L.L.C. v. Crestdale Assocs., LTD., 193 P.3d 536, 544-545 (Nev. 2008), see also Galardi v. Naples Polaris, LLC, 301 P.3d 364, 368 (Nev. 2013), Ringle v. Bruton, 120 Nev. 82, 93 (Nev. 2004) ("the court may not admit any other evidence of the parties' intent because the contract expresses their intent."). What the parties agreed to must be determined by the words used by the parties, not their thoughts or intentions. See Reno Club v. Young Inv. Co., 64 Nev. 312, 324 (Nev. 1947) ("The court is not at liberty, either to disregard words used by the parties, descriptive of the subject matter or of any material incident, or to insert words which the parties have not made use of.")

It is undisputed that Defendants knew, at the time they agreed to and signed this settlement contract, that they had not yet obtained funding. Defendants nonetheless clearly promised that they would and could make a payment pursuant to the Settlement Agreement based upon its plain language and terms. Defendants are sophisticated parties who understand the risks associated with financing agreements. If the parties had agreed to a condition precedent, the Court finds that it would have been part of the agreement. It was not. Such a condition does not appear anywhere in the plain text of the contract. The Court therefore finds that the plain language of the contract undisputedly supports Plaintiff's contention that the settlement agreement funds were due by April 1, 2021.

/ / /

### b. Affirmative Defenses

Defendants argue that summary judgment is improper because there are still genuine disputes of material fact as to their three affirmative defenses: (1) failure of condition precedent, (2) impossibility/impracticability, (3) mutual or unilateral mistake. All three affirmative defenses can be resolved on the undisputed facts. Further, all three affirmative defenses fail as a matter of law.

A condition precedent to an obligation to perform calls for the performance of some act after a contract is entered into, upon which the corresponding obligation to perform immediately is made to depend. NGA # 2 Ltd. Liab. Co. v. Rains, 946 P.2d 163, 166-167 (Nev. 1997). As discussed at length above, there is not a condition precedent in the contract. Pursuant to contract interpretation under the basic tenets of Nevada contract law, there is no language in the settlement agreement that plainly indicates that payment of the settlement agreement amount is contingent upon the Defendants successfully securing funding. Nor have Defendants successfully identified facts showing the existence of a genuine issue for trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Therefore, this is not a defense which precludes summary judgment or successfully defends Defendants from the allegations here.

The impossibility defense is also not available to Defendants here. Under Nevada law, the defense of impossibility is available to a promisor where his performance is made impossible or highly impractical by the occurrence of unforeseen contingencies, but if the unforeseen contingency is one which the promisor should have foreseen, and for which he should have provided, this defense is unavailable to him. See Nebaco, Inc. v. Riverview Realty Co., 482 P.2d 305, 307 (Nev. 1971). Nevada law follows to Restatement (Second) of Contracts § 261, in explaining that "in order for a supervening event to discharge a duty. . . . the non-occurrence of

that event must have been a basic assumption on which both parties made the contract." Cashman Equip. Co v. West Edna Assocs., 380 P.3d 844, 852 (Nev. 2016). Defendants are a sophisticated party, who would have been aware of the foreseeable possibility that a financing agreement would not necessarily proceed to completion at the time they signed the Settlement Agreement. The language of the Settlement Agreement itself states that "Encore Defendants represent and warrant that they have started efforts to obtain financing for their business operations." ECF No. 16-1 at 2. The Defendants have not disputed or denied that they had not secured financing as of the time of the execution of the Settlement Agreement. Defendants cannot therefore reasonably argue that failing to obtain this funding was an "unforeseeable contingency" within the meaning of Nevada law. Thus, the Defendants' failure to secure funding is not a supervening event which discharges their duty to pay Plaintiffs the agreed upon amount.

Finally, the defense of mutual or unilateral mistake is also unavailable to Defendants here. Generally, a mistake of fact occurs when a person understands the facts to be other than they are. General Motors v. Jackson, 900 P.2d 345, 349 (Nev. 1995) (internal citations omitted). Under Nevada law, mutual mistake occurs when both parties, at the time of contracting, share a misconception about a vital fact upon which they based their bargain. Id. (citing Bailey v. Ewing, 105 Idaho 636, 671 P.2d 1099, 1102 (Idaho Ct. App. 1983)). A unilateral mistake is not a ground for rescission unless the other party knows or has reason to know of the mistake. See Id. Further, where the party bears the risk of mistake, the defense of unilateral mistake is not available. See Monzo v. Eighth Judicial Dist. Court of Nev. (In re Irrevocable Trust Agreement of 1979), 331 P.3d 881, 885 (Nev. 2014).

Defendants argue that their mistake of fact was that the "COVID-19" pandemic would not preclude Defendants' receipt of financing. See ECF No. 20 at 14. The Court finds that this is not

actually a mistake of fact defense; rather, it is an impossibility defense masquerading as a mistake defense. The dispute is not about what facts were known to the parties at the time of contracting because there is no dispute that, at the time of contracting, the Defendants had not yet secured funding. There is also no argument that the Settlement Agreement was signed without any knowledge of the COVID-19 pandemic.  Rather, the 'mistake' of the Defendants arose from their own poor judgment about how the pandemic would impact the possibility of financing. This is insufficient to establish a defense of mutual or unilateral mistake.

Moreover, there is no evidence that demonstrates that Defendants' miscalculation about the potential for future financing, even if considered a 'mistake,' was mutual. Defendant Randy Soule's declaration merely indicates that he discussed the inability to pay without financing with his lawyers and that he believes his lawyers discussed this with Plaintiff's counsel. There is no evidence that Plaintiff entered into the Settlement Agreement with any belief, one way or another, about Defendants' future potential funding. Plaintiff's execution of the Settlement Agreement without a condition precedent clearly reflects an acceptance of Defendants' promise to make the payment. Thus, to the extent there was any mistake about contingencies or conditions that were allegedly inherent to the contract, it was solely the mistake of Defendants. Because Defendants clearly bear the risk of this mistake, the unilateral mistake defense is not available. See Monzo v. Eighth Judicial Dist. Court of Nev. (In re Irrevocable Trust Agreement of 1979), 331 P.3d 881, 885 (Nev. 2014).

Because of the plain language of the contract and the fact that all three of the Defendants' affirmative defenses fail as a matter of law, summary judgement is properly granted in Plaintiff's favor.

VI. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment (ECF No. 16) is GRANTED in full consistent with this order. The Clerk of Court is instructed to enter judgment in the amount of $1,250,000.00 in favor of the Plaintiff.

DATED: March 25, 2022.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**